UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EARL SCHLEBEN, No. 302986         No. 07-13012

       Plaintiff,                     District Judge Anna Diggs Taylor

v.                                Magistrate Judge R. Steven Whalen

SGT. CLIFFORD, ET AL,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

Before the Court is *Defendant's 12(b)(6) Motion for Dismissal* [Docket #8], which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Dismissal, insofar as it is based on Plaintiff's failure to exhaust his prison administrative remedies, be DENIED. However, Defendant's Motion for Dismissal on the merits of the claim should be GRANTED, and the Complaint DISMISSED WITH PREJUDICE.[1]

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, an MDOC inmate formerly housed at the Camp Lehman Facility in Grayling, Michigan, brings this action pursuant to 42 U.S.C. §1983, alleging violations of his constitutional rights involving a strip search conducted on September 6, 2006. Plaintiff alleges that upon his return to the facility following an outside work detail, MDOC Sergeant James Clifford (Defendant) began a routine strip search of the incoming inmates. *Complaint*

---

[1] On July 25, 2007, the Honorable Anna Diggs Taylor dismissed remaining Defendants Birkett and Lockwood.

at 4. Plaintiff claims that "[w]hen it was his turn to be searched," Defendant began the strip search in a hallway of the facility, rather than in more isolated rooms provided for strip searches. *Id.* Plaintiff claims that when he protested the location of the strip search, Defendant responded that he "[did] not have time for this," continuing the search. *Id.* Plaintiff alleges that during the course of his hallway strip search, Defendant received a telephone call, after which time he finished the strip search of the remaining inmates in a "proper room." *Id.* Plaintiff claims that he later discovered that the telephone call was placed from the control center by a female sergeant, Andria McNamara, informing Defendant that because Plaintiff's strip search could be seen on camera, he should move the strip search to a "proper room." *Id.* Plaintiff requests monetary damages.

## II. STANDARD OF REVIEW

### A. Rule 12(b)(6)

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted." Rule 12(b) also provides that if, on consideration of a motion under paragraph (6), "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 (summary judgment)." In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief. *Rippy v. Hattaway,* 270 F.3d 416, 419 (6th Cir. 2001). *See also Bell Atlantic Corp. v. Twombley*, —U.S.—, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

A dismissal for failure to state a claim under Rule 12(b)(6) is generally a dismissal with prejudice. However, a dismissal for failure of a prisoner to exhaust administrative

remedies under 42 U.S.C. §1997e(a) is a dismissal without prejudice. *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999). In *Jones v. Bock,* 549 U.S. 199, 127 S.Ct. 910, 921, 166 L.Ed.2d 798 (2007), the Supreme Court suggested, in dicta, that failure to exhaust might be a basis for dismissal under Rule 12(b)(6). However, in *Pointer v. Wilkinson*, 502 F.3d 369 (6th Cir. 2007), the Sixth Circuit found that a dismissal based on exhaustion may be distinct from a dismissal for failure to state a claim upon which relief may be granted. *See also Snider v. Melindez,* 199 F.3d 108, 112 (2d Cir.1999) (concluding that failure to state a claim as used in § 1997e(c) and § 1915(g) does not include failure to exhaust administrative remedies).

The distinction has no practical effect in this case.[2] Whether categorized as a 12(b)(6) motion or otherwise, the question in this motion is whether the Defendant has carried his burden of showing that the Plaintiff failed to exhaust his administrative remedies.

## B.  28 U.S.C. §1997e(a)

Under the Prison Litigation Reform Act (PLRA) of 1996, specifically 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under § 1983...by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought. *Porter v. Nussle*, 534 U.S. 516, 122 S.Ct. 983, 984, 152 L.Ed.2d 12(2002); *Booth v. Churner*, 532 U.S. 731, 741, 121 S.Ct. 819, 149 L.Ed.2d 958 (2001).

---

[2]In some cases, the distinction may effect a plaintiff's future request for IFP status, in that a Rule 12(b)(6) dismissal, with prejudice, would arguably count against him in a "three strikes" analysis under 28 U.S.C. §1915(g).

Furthermore, "exhaustion" under the PLRA means "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 92, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). In *Woodford*, the Supreme Court defined "proper exhaustion" as requiring "compliance with an agency's deadlines and other critical procedural rules...." *Id.*, 548 U.S. at 90. Thus, whether a claim is "properly exhausted" under the PLRA requires an examination of the particular institution's administrative rules and regulations regarding prisoner grievances.

However, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock, supra*, 127 S.Ct. at 921. Under *Jones*, it is Defendant's burden to assert non-exhaustion as an affirmative defense. *Id.*; *Grinter v. Knight*, __F.3d__, 2008 WL 2444809 (6th Cir. 2008). *Jones v. Bock* overruled a long line of Sixth Circuit cases that placed the burden of pleading and supporting exhaustion on plaintiffs.

### III. ANALYSIS[3]

Citing *Woodford v. Ngo*, *supra*, 548 U.S. 81,92, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006), Defendant argues that Plaintiff's failure to attempt to resolve his "grievable issue" with Defendant before filing a grievance as required by MDOC Policy Directive ("P.D.") 03.02.130 ¶R mandates dismissal.[4] *Defendant's Brief* at 3. Defendant also argues that Plaintiff's allegations, taken as true, do not rise to the level of a constitutional violation. *Id.* at 2. Defendant contends that even assuming for the sake of argument that the strip search amounted to a constitutional violation, he is entitled to qualified immunity, noting further that the strip search's alleged non-compliance with MDOC policy "does not itself rise to the

---

[3]The Court's discussion reverses the order of Defendant's first and second arguments.

[4]Defendant's Brief states incorrectly that the "two day" rule is found at P.D. 03.02.130 ¶P. In fact, it is contained in ¶*R* of the Policy Directive.

level of a constitutional violation." *Id*. at 2, 4-6.

**A. Exhaustion**

Defendant contends that Plaintiff's failure to comply with MDOC's grievance policy mandates dismissal of his claim. *Defendant's Brief* at 3; *Woodford*, 548 U.S. 81,92, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). Specifically, Defendant notes that Plaintiff did not attempt to resolve the issue with Defendant Clifford within 2 business days of the incident as required by MDOC P.D. 03.02.130 ¶R.

Paragraph R states in pertinent part:

> "[P]rior to submitting a written grievance, the grievant shall attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, *unless prevented by circumstances beyond his/her control*. If the complaint is not resolved the grievant may file a Step I grievance." (Emphasis added).

In response, Plaintiff points out that he "does not have unfettered access to the [Defendant] and therefore, while he tried to verbally resolve his issue with the Defendant, he could not because he can not force a conversation on a correctional officer, nor can he just walk up to an officer to discuss the issue." *Plaintiff's Response* at 6. Plaintiff's allegation that he was in effect prevented "by circumstances beyond his[] control" from resolving the matter before filing a grievance defeats Defendant's argument that his state remedies were unexhausted. Moreover, Defendant does not dispute that Plaintiff protested the location of the strip search at the time of the incident. Under *Jones v. Bock,* Defendant has not met his burden of demonstrating non-exhaustion.

**B. A Constitutional Violation**

Citing *Bell v. Wolfish*, 441 U.S. 520, 558-559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447,

Defendant contends that the strip search of Plaintiff following an outside work detail was proper, noting that "Plaintiff, as a prisoner, had no reasonable expectation of privacy." *Defendant's Brief* at 2.

> Strip searches in a prison setting are not *per se* unreasonable. *Bell,* at 558, 1884.

> "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted."

*Bell,* at 559; *United States v. Ramsey*, 431 U.S. 606, 97 S.Ct. 1972, 52 L.Ed.2d 617 (1977).

Plaintiff, conceding the need for strip searching inmates returning from work detail, apparently does not dispute the "scope" or "justification," for the search, contesting only its "manner" and "place." *Plaintiff's Response* at 5 of 8. His response to the present motion alleges that "[t]he fact that [he] was strip searched in front of cameras violated his Fourth Amendment right to privacy as it degraded him and humiliated him." *Plaintiff's Response* at pg. 4 of 8.

Plaintiff's allegations, taken as true, do not state a claim of constitutional magnitude. Even assuming that Sergeant McNamara, located at the control center, witnessed his strip search by camera, this does not amount to constitutional violation. *See Kent v. Johnson,* 821 F.2d 1220, 1226 (6th Cir. 1987)(*distinguishing Smith v. Chrans,* 629 F.Supp. 606, 611 (C.D.Ill.1986)) (Differentiating female officers viewing a prisoner "at close range and for extended periods of time, to retaliate against, punish and harass him" from "sightings by female guards which were 'occasional and almost inadvertent'").

Here, Plaintiff does not allege that he was strip searched in view of a female officer on more than one occasion. Sergeant McNamara's alleged view of Plaintiff's strip search in the

hallway was inadvertent - indeed, Plaintiff claims that the Sergeant McNamara, upon witnessing the strip search from the control room camera, called Defendant immediately, directing him to conduct the remainder of the searches in a lavatory. *Complaint* at 4. Plaintiff does not allege that Defendant searched him in view of other prisoner having completed or awaiting a strip search.[5] *Compare Cornwell v. Dahlberg,* 963 F.2d 912, 917 (6th Cir. 1992)(Prisoners subjected to an outdoor strip search in front of a number of female officers created the question of a constitutional violation). Moreover, although Plaintiff alleges in his response that the search "degraded . . . and humiliated him," at no point does he allege that *Defendant* sought to either degrade or humiliate him, stating only that Defendant said that he did not "have time" to address Plaintiff's complaint.[6] "[A] necessary element of any such privacy claim is that the search be conducted by guards to humiliate or degrade the prisoner." *Harris v. Caruso,* 2006 WL 2521403, at *8 (W.D.Mich.2006) *(citing Henry v. Pogats,* No. 93-2462, 1994 WL 462129, at * 2 (6th Cir. Aug. 25, 1994)). In fact, Defendant, denying that he intended to humiliate Plaintiff, and stating that he experienced a staff shortage at the time, conducted the hallway strip search only after realizing that he "could not conduct the searches in the bathroom because this would leave the prisoners waiting to be strip-searched unescorted in a restricted area. *Docket #13*, Exhibit 1 at ¶¶4,7. Defendant states further that after backup staff arrived, the searches were completed "in separate, isolated rooms." *Id*. at ¶15.

---

[5] Plaintiff's Response states somewhat confusingly that his strip search by a female officer violated his constitutional rights, an allegation absent from the Complaint and his administrative grievances. *Docket #10* at 5 of 8. Also, on the first page of the Response, Plaintiff refers to himself as Andre Lee Coleman-Bey. The Court concludes that a different complaint's allegations, perhaps by a fellow inmate, were grafted onto Plaintiff's submission.

[6] Further, Defendant's Reply [Docket #13] contains an affidavit by both Defendant and McNamara, accounting for the events in question, including a denial by the McNamara that she observed an unclothed prisoner. *Id*., Exhibit 3 at ¶8.

## C. Qualified Immunity

Defendant argues further that even if the strip search in the hall amounted to a constitutional violation, he is nonetheless entitled to qualified immunity. *Defendant's Brief* at 4-6.

Under *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), a state official is protected by qualified immunity unless the Plaintiff shows (1) that the Defendant violated a constitutional right, and (2) the right was clearly established to the extent that a reasonable person in the Defendant's position would know that the conduct complained of was unlawful.[7] In *Higgason v. Stephens,* 288 F.3d 868, 876-877 (6th Cir.2002), the Sixth Circuit set forth a three-part test to determine whether a government official is entitled to the defense of qualified immunity: (1) was there a violation of a constitutionally protected right; (2) was that right clearly established at the time; and (3) has the plaintiff alleged and shown by sufficient evidence that what the official allegedly did was objectively unreasonable? "If the plaintiff fails to establish any one of these elements, qualified immunity must be granted." *Meals v. City of Memphis, Tenn.,* 493 F.3d 720, 729 (6th Cir. 2007); *Radvansky v. City of Olmsted Falls,* 395 F.3d 291, 302 (6th Cir. 2005).

Given the sum of Plaintiff's allegations and even assuming a constitutional violation of a clearly established right, Plaintiff cannot establish the third prong of *Higgason*. At the time of the incident, Defendant was carrying out a reasonable strip search of a number of inmates returning from a work detail. The fact that he conducted an otherwise reasonable strip search in a hallway for a brief period as a result of security considerations before moving the procedure to a more private area is not objectively unreasonable. Stated differently, it was

---

[7] The *Saucier* inquiry is sequential. If there was not constitutional violation–and under these facts, there was not–the defendant is entitled to qualified immunity.

not clearly established that conducting a strip search under this singular set of facts would violate the constitution.

### D. Non-Compliance With MDOC Policy

Lastly, Defendant argues that although the hallway strip search may have violated MDOC procedure, a violation of policy, by itself, does not automatically state a constitutional claim. *Defendant's Brief* at 4. Defendant acknowledges that he received a "written counseling" as a result of conducting the search in the hall in view of a camera, implying that MDOC policy was violated by the hall searches. *Defendant's Reply*, Exhibit 1 at ¶16. However, "failure to comply with a state regulation is not itself a constitutional violation." *Barber v. City of Salem, Ohio,* 953 F.2d 232, 240 (6th Cir.1992). Defendant states that he immediately moved the remaining strip searches to an isolated area upon being informed that the searches were visible in the control room. *Id.* at ¶15. Defendant's hallway strip search, presumably a violation of MDOC policy, was by both parties' account, a nonetheless inadvertent and isolated incident.

## IV. CONCLUSION

For these reasons, I recommend that Defendant's Motion for Dismissal [Docket #8], insofar as it is based on Plaintiff's failure to exhaust his state remedies should be DENIED. Defendant's Motion for Dismissal on the merits of the claim should be GRANTED, and the complaint DISMISSED WITH PREJUDICE.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v.*

*Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen  
R. STEVEN WHALEN  
UNITED STATES MAGISTRATE JUDGE

Dated:  August 27, 2008

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on August 27, 2008.

s/Susan Jefferson  
Case Manager